**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILL LOCKYER, Attorney General of
the State of California; THE
STATE OF CALIFORNIA, ex rel,
　　　　　　*Plaintiffs-Appellants,*

　　　　　　and

DEPARTMENT OF WATER RESOURCES,
　　　　　　*Plaintiff,*

　　　　　　v.

MIRANT CORPORATION; MIRANT
AMERICAS, INC.; MIRANT
CALIFORNIA INVESTMENTS, INC.;
MIRANT CALIFORNIA, L.L.C.;
MIRANT AMERICAS ENERGY
MARKETING LP; MIRANT DELTA,
L.L.C.; MIRANT POTRERO, L.L.C.,
　　　　　　*Defendants-Appellees.*

No. 04-15024

D.C. No.
CV-02-01787-VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
September 14, 2004—San Francisco, California

Filed February 10, 2005

Before: William A. Fletcher, Raymond C. Fisher,
Circuit Judges, and B. Lynn Winmill,* District Judge.

*The Honorable B. Lynn Winmill, Chief United States District Judge,
District of Idaho, sitting by designation.

Opinion by Judge William A. Fletcher

## COUNSEL

Harvey I. Saferstein and Nada I. Shamonki, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, Santa Monica, California; Damon M. Connolly, Thomas Greene, Catherine A. Jackson, and Tamar Pachter (argued), Office of the California Attorney General, San Francisco, California, for the plaintiffs-appellants.

Bryan A. Merryman, Robert P. Pongetti, and John A. Sturgeon, White & Case, Los Angeles, California; Robert B. Pringle (argued), Thelen Reid & Priest, San Francisco, California, for the defendants-appellees.

## OPINION

W. FLETCHER, Circuit Judge:

The Attorney General of California, Bill Lockyer, sues under section 16 of the Clayton Act, 15 U.S.C. § 26, seeking

divestiture by the Mirant defendants (collectively, "Mirant") of three electrical generating plants. The district court granted a stay pursuant to *Landis v. North American Co.*, 299 U.S. 248 (1936), pending the resolution of Mirant's Chapter 11 petitions in a bankruptcy court in Texas. We hold that the district court had jurisdiction to determine whether the automatic stay of the Texas bankruptcy court applied to the Attorney General's suit, and that the Attorney General's suit comes within the "police or regulatory power" exception of 11 U.S.C. § 362(b)(4) to the automatic stay. We further hold, in the circumstances of this case, that a *Landis* stay is not justified. Accordingly, we vacate the stay and remand to allow the Attorney General's suit to proceed on the merits.

## I. Background

In 1996, California passed Assembly Bill 1890, which required large investor-owned utilities to divest certain electrical generating plants as part of the state's deregulation of its electrical generation industry. Pursuant to this mandatory divestiture, Pacific Gas & Electric in 1999 sold its Pittsburg and Contra Costa Power Plants in Contra Costa County, as well as its Potrero Power Plant in San Francisco, to Mirant Delta, LLC and Mirant Potrero, LLC. The Attorney General alleges that the combined generating capacity of these three plants amounts to approximately 44 percent of the northern California wholesale spot electricity market.

On April 15, 2002, the Attorney General sued Mirant in federal district court, alleging that Mirant's ownership of the plants gives it the incentive and ability to exercise market power in violation of section 7 of the Clayton Act. *See* 15 U.S.C. § 18. The Attorney General sought equitable relief and damages under both the Clayton Act and California Business & Professions Code § 17204. The district court dismissed the claims for violation of California Business & Professions Code § 17204 and for damages under the Clayton Act, but found that the allegations in the complaint were sufficient to

state a claim for injunctive relief under section 16 of the Clayton Act. *See* 15 U.S.C. § 26.

On July 14 and July 15, 2003, Mirant filed voluntary petitions to reorganize under Chapter 11 in the United States Bankruptcy Court for the Northern District of Texas. Subsequently, Mirant moved in the bankruptcy court for an order modifying the automatic stay to allow three suits, including two brought by the Attorney General (both separate from this suit), to proceed in the Ninth Circuit, where they were then pending on appeal.[1] The bankruptcy court granted the motion, but did not determine whether the appeals were, in fact, subject to the automatic stay. Instead, it granted the motion and modified the stay only "to the extent necessary and applicable."

On the same day that Mirant moved in the bankruptcy court to allow the Ninth Circuit appeals to proceed, it also filed a "Suggestion of Stay" in district court in this case, advising the court to "take . . . notice that . . . actions taken in violation of the [automatic] stay are void" and may result in the "imposition of sanctions by the Bankruptcy Court." The "Suggestion of Stay" did not explicitly argue that the Attorney General's Clayton Act suit was subject to the automatic stay, nor did it request that the district court determine the automatic stay's applicability.

---

[1]None of these suits was related to the present suit, although all involved issues of energy regulation. The Attorney General's two suits concerned, respectively, Mirant's sale of "ancillary services" (a type of wholesale energy capacity), and the question of whether Mirant had properly filed its wholesale electricity rates with the Federal Energy Regulatory Commission. These cases were consolidated, and the Ninth Circuit affirmed their dismissal on preemption grounds. *See California v. Transcanada Power*, 110 Fed. Appx. 839 (9th Cir. 2004) (unpublished disposition). The third lawsuit concerned allegations by the Public Utility District of Snohomish County that Mirant and other entities manipulated wholesale energy markets. It was also dismissed. *See Pub. Util. Dist. No. 1 v. Dynegy Power Mktg., Inc.*, 384 F.3d 756 (9th Cir. 2004).

The district court invited a noticed motion in which the parties could present their positions on whether the automatic stay was applicable. The Attorney General moved for a determination that the suit was exempt from the automatic stay because it sought to enforce California's "police or regulatory power" within the meaning of 11 U.S.C. § 362(b)(4). Without taking a position on the applicability of § 362(b)(4), Mirant urged the district court to exercise its discretionary power to stay the action. The district court declined to decide whether the Attorney General's suit came within § 362(b)(4). Citing *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), it granted the discretionary stay requested by Mirant.

The court relied on three factors in granting the stay. First, it found that its jurisdiction to determine the scope of the "police or regulatory power" exception under § 362(b)(4), and hence the applicability of the automatic stay, was doubtful under *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), and *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (en banc). Second, it found that the applicability of § 362(b)(4) raised unsettled questions of law. Third, it found that the stay was "efficient for [its] docket," and that it was "the fair and practical course for the parties." The Attorney General timely appealed. We now vacate and remand.

## II.   Our Jurisdiction to Review the Stay

Before considering the merits, we must first decide whether we have jurisdiction under 28 U.S.C. § 1291 to review the district court's stay. We hold that we have jurisdiction over the appeal because the order puts the Attorney General "effectively out of court" within the meaning of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 9 (1983), and *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962), and because the stay is an appealable collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).

## A.  "Effectively Out of Court"

We first hold that the stay order in the district court is final under what has come to be known as the *Moses H. Cone* doctrine. In *Moses H. Cone*, a hospital had sued in state court seeking a declaration that a contract to which it was a party did not confer a right to arbitration. The other party to the contract then filed suit in federal district court seeking an order compelling arbitration. The hospital successfully moved for a stay in federal court pending resolution of the arbitration question in state court. Relying on its earlier decision in *Idlewild*, the Supreme Court held that the district court's stay order was appealable under § 1291. As a result of the stay, there would be "no further litigation in the federal forum" and the state's judgment on the arbitration issue would be res judicata, leaving the contractor "effectively out of court." *Moses H. Cone*, 460 U.S. at 9-10.

In *Idlewild*, plaintiff Idlewild Liquor had sought a declaratory judgment in federal district court that the New York Alcoholic Beverage Law was unconstitutional. Rather than convene a three-judge district court, the one-judge court stayed the action under *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), to give the New York state courts the opportunity to address the issue. The Supreme Court held that the stay order was appealable, even though it was entirely possible that Idlewild Liquor would be able to return to federal district court after the state court dealt with state-law questions. *Moses H. Cone*, 460 U.S. at 10. Even in that circumstance, where the case might well come back to federal district court, Idlewild Liquor was "effectively out of court" for purposes of appealability of the stay order. *Idlewild*, 370 U.S. at 715 n.2.

The stay in this case is much like the stay in *Idlewild*. In dealing with Mirant's Chapter 11 petitions, the bankruptcy court may well order divestiture of the three power plants as part of a reorganization plan under Chapter 11. If Mirant's

Chapter 11 proceeding in the bankruptcy court results in divestiture of the plants, the Attorney General's Clayton Act case in the district court will be mooted, just as Idlewild's federal constitutional claims in the district court would have been mooted if the New York state courts had granted relief on state-law grounds. *See Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219-21 (3d Cir. 1989) (concluding that the danger that a stay would render a claim moot was equivalent to res judicata for the purposes of applying the *Moses H. Cone* test).

Because the bankruptcy court has not yet determined whether Mirant's plants will be divested as a result of the reorganization, we cannot say with certainty that the Attorney General's district court suit will be moot. However, as *Idlewild* establishes, absolute certainty is not required in order to put a party "effectively out of court" within the meaning of the *Moses H. Cone* doctrine. *See United States v. General Dynamics Corp.*, 828 F.2d 1356, 1361-62 (9th Cir. 1987) (where a possibility existed that application of the collateral estoppel doctrine might result in dismissal, the stay was appealable under *Moses H. Cone*). Although the mooting of Attorney General Lockyer's Clayton Act claim is not inevitable, both parties and the district court appear to view it as a substantial possibility. Indeed, the district court explicitly anticipated the possibility of mootness, citing the potential waste of "significant judicial and party resources" if the bankruptcy proceedings mooted the plaintiff's claims before the district court rendered judgment. This case is thus distinguishable from situations in which the district court clearly foresees and intends that proceedings will resume after the stay has expired. *See Cofab, Inc. v. Philadelphia Joint Bd.*, 141 F.3d 105, 109 (3d Cir. 1998) (*Moses H. Cone* did not apply where district court had no intention to " 'deep six' the suit").

**[1]** If the Attorney General's Clayton Act claim comes within the § 362(b)(4) exception to the automatic stay, no legal barrier exists, apart from the district court's stay order

itself, to his pursuit of his suit in the district court in California. In such circumstances, the stay puts him "effectively out of court," and we have appellate jurisdiction to determine the propriety of the stay.

## B.    Collateral Order

**[2]** Even if the stay did not constitute a final order under *Moses H. Cone*, we would have jurisdiction under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), under which certain collateral orders of the district court may be immediately appealed. To be included among "the small class of decisions excepted from the final-judgment rule by *Cohen*," an order "must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (internal quotation marks omitted; bracketed numbers added).

In *Moses H. Cone*, the Supreme Court held in the alternative that the district court's stay was an appealable collateral order under *Cohen*. 460 U.S. at 11-12. The Court concluded that the first criterion was satisfied because, although the stay was technically open to reconsideration, "there is no basis to suppose that the District Judge contemplated any reconsideration of the decision to defer to the parallel state-court suit." *Id.* at 12-13. It also concluded that the second and third *Cohen* criteria were met, since "[a]n order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits" and, because of the possibility of res judicata, "this order would be entirely unreviewable if not appealed now." *Id.* at 12. *See also General Dynamics*, 828 F.2d at 1360 n.4 ("Where a district court enters a stay that can effectively end the litigation in that court, the court's ability to lift the stay if it chooses would seem to be irrelevant.")

**[3]** We hold that the *Cohen* criteria are also satisfied here. The first criterion is satisfied because, even though the stay

order could theoretically be modified, the district court did not impose a time limit on the stay or note circumstances that might result in its modification. *See Moses H. Cone*, 460 U.S. at 13 (stay order was conclusive where there was "no basis to suppose that the District Judge contemplated any reconsideration of his decision to defer to the parallel . . . suit"); *Burns v. Watler*, 931 F.2d 140, 144 (1st Cir. 1991) (even where stay was nominally modifiable, there was "no indication in the record" that the district court intended to take further action). The second criterion is satisfied because the district court's central justification for issuing the stay was the desirability of avoiding two analytically distinct determinations: the applicability of the "police or regulatory power" exception to § 362(b)(4) and the legality of Mirant's ownership of the three power plants. Finally, the third criterion is satisfied. Either the bankruptcy proceedings will moot the Clayton Act claim, in which case the district court suit will be dismissed; or the bankruptcy proceedings will *not* moot the Clayton Act claim, in which case the district court will lift the stay on its own and proceed with the suit. In either event, the propriety of the stay will be unreviewable on appeal. *See Marchetti v. Bitterolf*, 968 F.2d 963, 966 (9th Cir. 1992) (unreviewability factor was met where it was likely that case would be mooted). We therefore conclude that the stay is reviewable under *Cohen* as a collateral order.

## C.   Aggrieved by the Stay

Mirant argues that, even if the stay order is final under *Moses H. Cone* or a reviewable collateral order under *Cohen*, the Attorney General cannot appeal because he is not "aggrieved" by the stay. In *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 333 (1980), the Court held that "[a] party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." (Citations omitted.) Mirant contends that the Attorney General is not aggrieved because either he will receive the divestiture remedy he seeks from the bankruptcy

court; or, if the bankruptcy court does not order divestiture and the district court stay is lifted, he will be allowed to seek divestiture in his Clayton Act litigation in the district court. Mirant argues that the two outcomes — divestiture pursuant to the bankruptcy proceedings and divestiture ordered by the district court — are equivalent.

Mirant's argument fails to recognize two things. First, while it is possible that Mirant will eventually be ordered to divest itself of the three power plants, the sequence of events envisioned by Mirant may entail considerable delay. This is particularly so if the bankruptcy court does not order divestiture and the Attorney General must await the conclusion of the bankruptcy proceedings before being allowed to resume his Clayton Act suit in the district court. If Mirant's ownership of the three power plants in fact violates the Clayton Act, northern California purchasers of electricity will have been unnecessarily injured by the delay resulting from the stay.

Second, Mirant's argument fails to recognize that a divestiture order to cure a Clayton Act violation is different from a divestiture order entered pursuant to a bankruptcy reorganization. The Clayton Act could possibly be raised as an issue in the Texas bankruptcy proceeding, for any confirmable reorganization plan must have been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). *See also Pacific Gas & Electric Co. v. California*, 350 F.3d 932 (9th Cir. 2003) (addressing preemption of non-bankruptcy laws under 11 U.S.C. §§ 1123(a)(5) and 1142(a)); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157-58 (5th Cir. 1988) (opponents to reorganization plan contended that the plan violated the federal antitrust laws; court declined to reach the issue on the ground that the objection had been raised too late). But there is no guarantee (or even likelihood) that the bankruptcy court will consider the effect of the Clayton Act; nor is there a guarantee, even if it does, that it will entertain briefing or hold hearings, or that it will justify or explain the reorganization plan in terms of the Clayton Act. If divestiture

of the three power plants is ordered by the bankruptcy court on some basis other than the Clayton Act, the Attorney General will not have received, in the relevant legal sense of the term, "all that he has sought." *Roper*, 445 U.S. at 333. That the alleged Clayton Act violation by Mirant might incidentally be cured in the course of the bankruptcy proceedings is not equivalent to a binding legal determination by the district court that Mirant violated the Clayton Act and a divestiture order by that court. The difference is more than theoretical. For example, without a binding decision on the merits of the Attorney General's Clayton Act claim, a single entity could acquire the three plants from Mirant. The Attorney General would then be required to bring another Clayton Act suit, now against the new entity instead of Mirant.

**[4]** Regardless of how events ultimately transpire, the stay order has deprived the Attorney General — at least temporarily and perhaps permanently — of the legal remedy he seeks against Mirant. He has thus been aggrieved within the meaning of *Roper*, and we have jurisdiction over this appeal.

### III. The District Court's *Landis* Stay

We review a district court's stay order for abuse of discretion, but this standard is "somewhat less deferential" than the abuse of discretion standard used in other contexts. *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000); *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir. 1993). A district court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

The district court gave three reasons for granting a *Landis* stay. First, it believed that its jurisdiction to determine whether the automatic stay applied to the suit before it was questionable. Second, it believed that the "police or regulatory power" exception to the automatic stay under 11 U.S.C.

§ 362(b)(4) was also questionable. Third, in light of the foregoing, it held that granting the stay was "efficient for [its] docket and is the fair and practical course for the parties." We consider these reasons in turn.

### A.   Jurisdiction to Determine the Applicability of the Automatic Stay

Relying on *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), and *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (en banc), the district court expressed concern that it did not have jurisdiction to determine the applicability of the automatic stay. The district court's concern was unfounded.

In *Celotex,* the bankruptcy court issued a § 105 injunction preventing plaintiffs who had won a district court suit against the debtor from executing on a supersedeas bond that would have satisfied their judgment. *See* 11 U.S.C. § 105(a). The district court allowed plaintiffs to execute on the bond despite the bankruptcy court's § 105 injunction, on the ground that the judgment had been affirmed on appeal and the bond had become due before the bankruptcy filing. The decision of the district court was appealed to the Fifth Circuit, which affirmed. The Supreme Court reversed. Without deciding whether the § 105 injunction was properly issued, the Court held that the district court acted improperly in disregarding it. If plaintiffs wanted relief from the injunction, wrote the Court, they should have sought modification in the bankruptcy court that issued the injunction. 514 U.S. at 313.

In *Gruntz,* Gruntz had twice been convicted in state court of failure to pay child support. He filed for bankruptcy prior to sentencing in the first criminal proceeding, and prior to the institution of the second criminal proceeding. He brought an adversary proceeding in bankruptcy court seeking a declaration that the state criminal proceedings violated the automatic stay. The bankruptcy court denied relief, holding that it was collaterally estopped by the state court's decision that the

automatic stay did not apply. On appeal, we held that the state court has the power to decide whether the automatic stay applies to its proceedings. 202 F.3d at 1087 ("Thus, unless a specific § 105 injunction applies, state trial courts need not seek bankruptcy court approval before commencing criminal proceedings."). But a state court makes such a decision at its peril, for the bankruptcy court is not precluded by the state court's decision. If the bankruptcy court later decides that the state court was incorrect, the state court proceedings in violation of the stay are void. *See*, *e.g.*, *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992); *In re Shamblin*, 890 F.2d 123 (9th Cir. 1989). On the other hand, if the state court is correct in deciding that the stay does not apply, the state court proceedings are not void. *Gruntz*, 202 F.3d at 1087. We ultimately affirmed the result reached by the bankruptcy court based on our determination, independent of the state court's decision, that the state criminal proceedings were not within the scope of the stay.

**[5]** *Celotex* and *Gruntz* both stand for familiar propositions in bankruptcy law. Neither case casts doubt on a district court's ability to decide for itself whether proceedings pending before it are subject to an automatic stay. *Celotex* tells us that a district court has no authority to modify or to disregard a § 105 injunction. Only the bankruptcy court that issued the injunction has the authority to modify the injunction, and until the injunction is modified the district court is bound by it. *Gruntz* tells us that a state court has the authority to decide whether its proceeding is within the scope of the automatic stay, but the state court's holding is not entitled to preclusive effect in the bankruptcy court.

**[6]** There is no reason why a federal court should have less power than a state court to decide whether its proceeding comes within the scope of the automatic stay. Indeed, there are a number of cases, in this circuit and elsewhere, in which a federal court has decided whether the automatic stay applies to a proceeding pending before it. *See, e.g.*, *NLRB v. Conti-*

*nental Hagen Corp.*, 932 F.2d 828 (9th Cir. 1991) (NLRB enforcement proceeding in the court of appeals comes within the § 362(b)(4) exception to the automatic stay); *NLRB v. Twin Cities Elec.*, 907 F.2d 108 (9th Cir. 1990) (same); *Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279 (9th Cir. 1983) (Commodities Exchange Act proceeding in the district court comes within the § 362(b)(5) exception to the automatic stay); *Chao v. Hospital Staffing Servs., Inc.*, 270 F.3d 374, 384-85 (6th Cir. 2001) (suit under the federal Fair Labor Standards Act in the district court does not come within the § 362(b)(4) exception to the automatic stay, but the district court has authority to decide the applicability of the exception); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986) (NLRB enforcement proceeding in the court of appeals comes within the § 362(b)(4) exception to the automatic stay); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986) (" 'Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending . . . and the bankruptcy court.' " (citation omitted)); *In re Baldwin-United Corp.*, 765 F.2d 343, 347 (2d Cir. 1985) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."); *SEC v. First Fin. Group of Texas*, 645 F.2d 429 (5th Cir. 1981) (civil enforcement action under the federal securities laws in the district court comes within the § 362(b)(4) exception to the automatic stay). We are aware of no case holding to the contrary.

**[7]** We therefore hold, in accordance with established law, that a district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction. Specifically, as applied to this case, we hold that the district court has jurisdiction to decide whether the Attorney General's section 16

Clayton Act suit comes within the exception to the automatic stay for "police or regulatory power" under § 362(b)(4).

B.   Exception from the Automatic Stay under § 362(b)(4)

The applicability of the automatic stay, and the extent of the "police or regulatory power" exception under § 362(b)(4), are questions of law that we consider de novo. *In re Hines*, 198 B.R. 769 (9th Cir. BAP 1996), *rev'd on other grounds by* 147 F.3d 1185 (9th Cir. 1998) (whether an act falls within statutory exception to the stay is reviewed de novo). The record is sufficiently complete that we may decide the question even though the district court did not. *Chang v. United States*, 327 F.3d 911, 928 (9th Cir. 2003).

**[8]** Section 362(b)(4) provides that the filing of a bankruptcy petition does not operate as an automatic stay "of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4). A government unit need not affirmatively seek relief from the automatic stay to initiate or continue an action subject to the exemption. *Edward Cooper Painting*, 804 F.2d at 939. The theory of the exception is that bankruptcy should not be " 'a haven for wrongdoers.' " *Universal Life Church, Inc. v. United States* (*In re Universal Life Church*), 128 F.3d 1294, 1297 (9th Cir. 1997) (citations omitted).

The "police or regulatory power" exception allows the enforcement of laws affecting health, welfare, morals, and safety despite the pendency of the bankruptcy proceeding. The exception applies, for example, to suits to determine a federal income tax exemption, *see id.*; to enforce federal labor laws, *see Twin Cities Electric*, 907 F.2d at 109; to enforce state bar disciplinary rules, *see Wade v. State Bar of Arizona*, 948 F.2d 1122 (9th Cir. 1991); to enforce federal employment discrimination laws, *see EEOC v. Hall's Motor Transit Co.*, 789 F.2d 1011 (3rd Cir. 1986); and to enforce state consumer

protection laws, *see In re First Alliance Mortgage*, 263 B.R. 99 (B.A.P. 9th Cir. 2001).

Mirant did not argue in the district court that the Attorney General's Clayton Act suit fell outside the § 362(b)(4) exception. In its initial briefing before us, Mirant similarly did not argue that the suit fell outside the exception, even though the Attorney General had briefed the question. After oral argument, we asked the parties to submit supplemental briefing in order to be sure that Mirant had been given a full opportunity to address the question.

Mirant now makes two arguments to us. First, it argues that the § 362(b)(4) exception does not apply because the statutory reference to "such government unit's police or regulatory power" means that the government in question must be suing in furtherance of its *own* police and regulatory power. Mirant contends that the state Attorney General is not doing so in this case because his only remaining claim is for injunctive relief under section 16 of the federal Clayton Act, which authorizes "[a]ny person, firm, corporation, or association" to seek injunctive relief "against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

**[9]** Mirant suggests in its argument that a suit by a California official to enforce the federal Clayton Act would not be a suit within its own authority, and that only a suit by the United States Attorney to enforce the Clayton Act would come within § 362(b)(4). This suggestion is without foundation in the case law. A number of cases make clear that the § 362(b)(4) exception extends to a government's enforcement of laws enacted by other governments. *See, e.g.*, *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024-25 (2d Cir. 1991) (municipality enforcing federal environmental law); *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1186, 1188 & n. 5 (5th Cir. 1986) (United States enforcing Puerto Rico law); *New York v. Mirant New York, Inc.*, 300 B.R. 174, 178-79 (S.D.N.Y. 2003) (state enforcing federal environmental

law); *Herman v. Brown*, 160 B.R. 780, 781 (E.D. La. 1993) (state enforcing federal racketeering law); *People of the State of Illinois v. Electrical Utilities*, 41 B.R. 874, 876-77 (N.D. Ill. 1984) (state enforcing federal environmental law); *In re Canarico Quarries, Inc.*, 466 F. Supp. 1333, 1334 (D. Puerto Rico 1979) (commonwealth enforcing federal Clean Air Act); *In re Pincombe*, 256 B.R. 774, 781-83 & n.3 (Bankr. N.D. Ill. 2000) (state enforcing federal employment discrimination law); *In re New York Trap Rock Corp.*, 153 B.R. 642, 643 (Bankr. S.D.N.Y. 1993) (county enforcing federal environmental law).

Mirant argues explicitly that because section 16 of the Clayton Act authorizes suits by private parties, a government unit suing to enforce that section cannot be acting as a government within the meaning of § 362(b)(4). This argument is also without foundation. While section 16 does authorize suits by private entities, it also authorizes suits by state governments. *See California v. Am. Stores Co.*, 495 U.S. 271, 275-76 (1990) (upholding injunctive relief awarded to state in suit brought under section 16 of the Clayton Act). When the Attorney General seeks to enforce this law on behalf of the citizens of California, he is acting within the police power of the California government. His suit is authorized by the state, is in furtherance of the state's authority, and uses state resources. We are aware of no authority, and Mirant cites none, holding that a government suit that would otherwise be within the "police or regulatory power" exception of § 362(b)(4) ceases to come within that exception whenever the provision of law under which the government sues also authorizes suits by private entities.

[10] Second, Mirant argues that the Attorney General's suit does not satisfy either of the two established tests for the "police or regulatory powers" exception of § 362(b)(4). The two tests are the related, and somewhat overlapping, "pecuniary purpose" and "public purpose" tests. A suit comes within the exception of § 362(b)(4) if it satisfies either test. *See Univer-*

*sal Life Church*, 128 F.3d at 1297 ("The question in this case is whether [the government action] meets *either* test.") (emphasis added). We hold that the Attorney General's Clayton Act suit satisfies both tests.

**[11]** Under the "pecuniary purpose" test, "the court determines whether the [government] action relates primarily to the protection of the government's pecuniary interest in the debtors' property or to matters of public safety and health." *Continental Hagen,* 932 F.2d at 828 (internal quotation marks and modifications omitted). *See also Edward Cooper Painting,* 804 F.2d at 942; *In re State of Missouri*, 647 F.2d 768, 776 (8th Cir. 1981). If the suit seeks to protect the government's pecuniary interest, the § 362(b)(4) exception does not apply. On the other hand, if the suit seeks to protect public safety and welfare, the exception does apply. The purpose of the "pecuniary purpose" test is to prevent suits that would allow a governmental unit to obtain an advantage over creditors or potential creditors in the bankruptcy proceeding.

**[12]** The Attorney General's section 16 Clayton Act suit clearly satisfies the "pecuniary purpose" test. After having been trimmed down by the district court, the suit now seeks only divestiture. The Attorney General does not seek a monetary recovery, and asserts no interest of the state in the three power plants that are the subject of his suit. Rather, the Attorney General seeks only an injunction that would require Mirant to divest itself of the plants. There is nothing in this relief that would allow the Attorney General to gain an advantage over creditors in the bankruptcy proceeding. If granted, the only effect of the remedy would be to require that the plants be sold, with the entire proceeds going to the bankruptcy estate. Further, it is clear that the suit seeks to protect the welfare of electricity consumers in northern California by protecting them from the excessive charges that might result from an undue concentration of market power.

**[13]** Under the "public purpose" test, the court determines whether the government seeks to "effectuate public policy" or

to adjudicate "private rights." *NLRB v. Continental Hagen*, 932 F.2d at 833. If the government seeks the former, the exception applies; if the government seeks the latter, it does not. *Id.*; *see also In re State of Missouri*, 647 F.2d at 776. A suit does not satisfy the "public purpose" test if it is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public. *See*, *e.g.*, *Chao*, 270 F.3d 378 (suit to recover unpaid wages under the Fair Labor Standard Act does not come within § 362(b)(4)). The Attorney General's suit clearly satisfies the "public interest" test, for it is brought to protect the interest of all electricity consumers in northern California.

[14] We therefore hold that the Attorney General's section 16 Clayton Act suit comes within the "police or regulatory power" exception under § 362(b)(4), and that the automatic stay does not apply.

## C.   *Landis* Stay

[15] A district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In *Landis*, two holding companies sued the Securities and Exchange Commission ("SEC") in the District Court for the District of Columbia to enjoin enforcement of the Public Utility Holding Company Act of 1935 on the ground that it was unconstitutional. Numerous similar suits were filed, in the District of Columbia and elsewhere, against the SEC. The SEC filed a complaint in the district court for the Southern District of New York to compel other holding companies to comply with the terms of the Act. The District of Columbia district court stayed its suit, indicating that the stay would last until the New York district court suit was decided on appeal by the Supreme Court or was otherwise finally resolved.

[16] The Supreme Court reversed:

[A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id.* at 255. The Court noted that resolution of the New York district court suit could help narrow the issues considerably:

True, a decision in the cause then pending in New York may not settle every question of fact and law in suits by other companies, but in all likelihood it will settle many and simplify them all.

*Id.* at 256. Nonetheless, the Court held that a stay lasting until the New York district court suit was finally resolved exceeded "the limits of a fair discretion." *Id.* It then held that, in the circumstances now confronting it, where the New York district court had already had its case for a year, a stay lasting only until the New York district court decided the case might be appropriate. *Id.* at 256-57. It therefore remanded to the District of Columbia district court to consider whether to grant a stay of what was now likely to be fairly short duration. *Id.* at 259.

We have sustained, or authorized in principle, *Landis* stays on several occasions. In *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962), CMAX, a common carrier by air, sued Drewry, a shipper, in federal district court to recover $12,696.00, contending that Drewry had not paid the full amount of the government-approved tariff. At least a dozen other suits were later filed in the same district court, in which CMAX sued shippers on the same ground. The Civil Aeronautics Board ("CAB") then instituted an administrative enforcement proceeding against CMAX, contending that CMAX had charged

numerous shippers, including Drewry, more than the approved tariff. The district court stayed CMAX's suit against Drewry. CMAX sought mandamus.

Citing *Landis*, we set out the following framework:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 268. We denied mandamus. Applying the framework, we noted that CMAX sought only damages. It alleged no continuing harm and sought no injunctive or declaratory relief. Delay of CMAX's suit would result, at worst, in a delay in its monetary recovery, with possible (though by no means certain) loss of prejudgment interest. Further, we noted that the CAB proceeding would provide considerable assistance in resolving CMAX's suit against Drewry, as well as CMAX's other suits in the district court:

> [A]t the very least, the [CAB] proceeding will provide a means of developing comprehensive evidence bearing upon the highly technical tariff questions which are likely to arise in the district court case. Moreover, if that proceeding should result in a revocation of CMAX's operating authority, the district court will be enabled to explore the effect thereof on that carrier's standing to collect past undercharges. . . .

To these considerations must be added the fact that several other similar cases are now pending in the same district court, and more are likely to be filed in the near future. In the interests of uniform treatment of like suits there is much to be said for delaying the frontrunner.

*Id.* at 269.

In *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979), truck drivers sued their employer for unpaid wages under the federal Fair Labor Standards Act ("FLSA") (count I), and under their collective bargaining agreement (count II). The district court stayed both counts under the Federal Arbitration Act. On appeal, we held that the collective bargaining count was subject to arbitration, but that the FLSA count was not. We nonetheless held that a stay of the FLSA count might be justified under *Landis* and related cases:

> [S]ound reasons may exist . . . to support the district court's determination to stay the action under the powers to control its own docket and to provide for the prompt and efficient determination of the cases pending before it.
>
> * * *
>
> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court.

*Id.* at 863-64.

We noted that the resolution of the collective bargaining count in arbitration had the potential to advance significantly the resolution of the FLSA count:

> [T]he arbitrator would no doubt make findings as to what contract documents are controlling, the hours and work pattern of the claimants, and the amount of wages paid to them. . . . These findings, as well as the documents and testimony produced during the arbitration hearing, may be of valuable assistance to the court in resolving the Fair Labor Standards Act claims presented in count I of the complaint, even under the assumption that the court is not bound and controlled by the arbitrator's conclusions, a point we decline to address.

*Id.* at 863. We remanded to allow the district court to determine whether the stay of the FLSA count was proper. In so doing, however, we instructed the district court to take into account "the urgent nature of the statutory right to minimum compensation" under the FLSA, and suggested that a stay might be appropriately conditioned on assurance that the arbitration proceedings was going forward "with diligence and efficiency." *Id.* at 864. We wrote, "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Id.*

Finally, in *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), Mediterranean sued to enforce a contract forming a joint venture with Ssangyong. The contract contained an arbitration clause. The district court held that the clause applied to some but not all of the counts in Mediterranean's complaint. It stayed the entire suit pending arbitration, not limited to the counts subject to arbitration. The arbitrable and non-arbitrable counts in the complaint over-

lapped a great deal both factually and legally. Citing *Landis* and *Leyva*, we sustained the stay of the entire proceeding as within the discretion of the district court. *Id.* at 1465.

In the case now before us, the district court stayed proceedings based in substantial part on its belief that its jurisdiction to decide the scope of the automatic stay was in doubt, and that the applicability of the § 362(b)(4) exception to the stay was also in doubt. We have now resolved both of these questions, holding that the district court does have jurisdiction to decide the scope of the stay and that the § 362(b)(4) exception applies. If we believed, after resolving these questions, that a *Landis* stay might still be appropriate, we would remand to allow the district court to exercise its discretion. However, we conclude that a *Landis* stay cannot be justified and therefore vacate the stay.

[17] On the facts of this case, neither the balance of hardships between the parties, nor the prospect of narrowing the factual and legal issues in the other proceeding, justifies a stay. Unlike the plaintiffs in *CMAX* and *Leyva*, who sought only damages for past harm, the Attorney General seeks injunctive relief against ongoing and future harm. *Landis* cautions that "if there is even a fair possibility that the stay . . . will work damage to some one else," the party seeking the stay "must make out a clear case of hardship or inequity." 299 U.S. at 255. There is more than just a "fair possibility" of harm to the Attorney General, and to the interests of the electricity consumers of northern California whose interest he seeks to protect. If the Attorney General's Clayton Act claim has merit, Mirant's ownership of the three power plants is an ongoing illegal concentration of market power that threatens economic harm to electricity consumers. For its part, Mirant has not made out a "clear case of hardship or inequity." To be sure, if the stay is vacated Mirant must proceed toward trial in the suit in the district court, but being required to defend a suit, without more, does not constitute a "clear case of hardship or inequity" within the meaning of *Landis*.

Further, it is highly doubtful that the bankruptcy court in Texas will provide a legal resolution to the Attorney General's Clayton Act claim. First, we note that neither the Attorney General nor Mirant has instituted an adversary action in the bankruptcy court seeking a determination whether the ownership of the plants by a single entity, such as Mirant, constitutes a Clayton Act violation. Second, the bankruptcy court is unlikely to consider, as part of its approval or disapproval of a Chapter 11 reorganization plan, whether ownership of the plants by a single entity is legal under the Clayton Act. Indeed, it may well approve a reorganization plan permitting Mirant to sell off the three power plants to a single entity, on the rationale that the plants are worth more when owned by a single entity.

We are aware of no case, other than this one, in which a district court has entered a *Landis* stay of a suit falling within the "police or regulatory power" exception to the automatic stay, and counsel has cited none. The very terms of the exception provide that the suit be brought by a governmental unit in furtherance of its "police or regulatory power," thereby indicating that a suit qualifying under the exception will be brought to protect an important governmental interest. Further, the "pecuniary interest" and "public interest" tests under which the exception is allowed are designed to ensure that a suit qualifying under § 362(b)(4) does not interfere with the ongoing bankruptcy proceeding. Because a suit permitted under § 362(b)(4) is thus distinct from the bankruptcy proceeding, it is relatively unlikely that resolution of the bankruptcy proceeding will significantly assist the district court in the decision of the factual and legal issues before it.

[18] We recognize the importance of the district court having the ability to control its own docket, particularly in this time of scarce judicial resources and crowded dockets. We do not intend that this opinion be read to restrict unduly the ability of the district court, in appropriate cases, to issue *Landis* stays, or to issue stays under other doctrines, such as *Colo-*

*rado River Water Conservation District v. United States*, 424 U.S. 800 (1976). We hold only that a *Landis* stay is improper in the circumstances of this case — where the power of the district court to decide whether the automatic stay applies is clear, where the inapplicability of the automatic stay is also clear, and where the proceeding in the bankruptcy court is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court.

### Conclusion

We hold that the district court has jurisdiction to decide whether the suit before it is stayed by the automatic stay of the bankruptcy court. We hold, further, that the suit qualifies under the exception to the automatic stay for "police or regulatory power" under 11 U.S.C. § 362(b)(4). Finally, we hold that a *Landis* stay is not justified under the circumstances of this case. We therefore VACATE the stay and REMAND to allow the Attorney General's suit to go forward on the merits of his Clayton Act claim.

VACATED and REMANDED.