Kenyard EDWARDS, Plaintiff,

v.

OPORTUN, INC., Defendant.

Case No. 16-cv-00519-EDL

United States District Court,
N.D. California.

Signed June 14, 2016

Lawrence Timothy Fisher, Annick Marie Persinger, Julia A. Luster, Yeremey O. Krivoshey, Bursor & Fisher, P.A., Walnut Creek, CA, Frederick J. Klorczyk, III, Bursor and Fisher, P.A., New York, NY, for Plaintiff.

Daniel Joshua Salinas, Eric Robert McDonough, Joseph A. Escarez, Seyfarth Shaw LLP, Los Angeles, CA, for Defendant.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S REQUEST TO STAY CASE

ELIZABETH D. LAPORTE, United States Magistrate Judge

On March 31, 2016, Defendant, Oportun, Inc., filed a Motion to Dismiss and Strike the Complaint or in the Alternative to Stay the Action. Dkt. No. 10. Plaintiff, Kenyard Edwards, filed an Opposition on May 16, 2016, and Defendant filed a Reply on May 23, 2016. The Court held a hearing on June 7, 2016. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part. Defendant's request to stay the case is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This class action lawsuit involves alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et. seq. arising out of debt collection telephone phone calls made by Defendant to Plaintiff. Plaintiff alleges that Defendant made twenty-six calls to his cell phone to collect a debt owed by someone other than Plaintiff. FAC at ¶ 1. He alleges that Defendant did so "using an autodialer and/or an artificial or prerecorded voice without his prior express written consent" in violation of the TCPA. FAC at ¶¶ 1-2. Plaintiff seeks statutory damages in the amount of $1,500 for each call in violation of the TCPA, an injunction against such calls, as well an order certifying the class and attorney fees and costs. FAC at p. 11. Defendant asserts that it believed when it called that the telephone number belonged to a customer with a past due balance. See Sears Decl. at ¶3.

On March 18, 2016, Defendant delivered to Plaintiff's counsel a cashier's check in the amount of the statutory penalty of $1,500 for each of the twenty-six phone calls as well as the $400 filing fee, for a total of $39,400. Escarez Decl., ¶¶ 2-4, Exs. A-B. In addition, Defendant placed Plaintiff's telephone number "on its do-not-call list and has stopped calling that number." Sears Decl., ¶ 13. Plaintiff states that he has "expressly rejected" Defendant's check or any other settlement offer. Opp. at 3.

## II. DEFENDANT'S MOTION TO DISMISS

Defendant contends that its payment to Plaintiff in the form of a cashier's check in the amount of $39,400 moots Plaintiff's individual and class claims. Defendant further contends that Plaintiff's class allegations should be stricken. Plaintiff opposes the Motion on the ground that his individual claims, as well as the claims of the class, are not moot because he did not accept Defendant's payment. Opp. at 2. He further contends that issues regarding the class allegations should be considered at the class certification stage rather than the pleading stage.

## A. Legal Standard

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir.2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S.Ct. 1937. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Furthermore, a court also need not "accept as true allegations that contradict matters properly subject to judicial notice." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001).

## B. Whether Plaintiff's Individual and Class Claims Are Moot

Defendant argues, citing Campbell–Ewald Co. v. Gomez, —— U.S. ——, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), that Plaintiff's individual and class claims should be dismissed as moot because Defendant has delivered to Plaintiff himself a check in the amount of the statutory penalties for the phone calls and the filing fee, and has also performed the actions Plaintiff demands in his claim for injunctive relief. Defendant asserts that although in other circumstances offers to settle have been found insufficient to moot a Plaintiff's individual and class claims, the uncondi-

tional nature of his actions set this case apart.

In Campbell–Ewald, the plaintiff filed a class action against the defendant for sending text messages in violation of the TCPA. After the lawsuit was filed but before the plaintiff filed for class certification, the defendant

> proposed to settle [the plaintiff's] individual claim and filed an offer of judgment pursuant to Federal Rule of Civil Procedure 68.... [The defendant] also proposed a stipulated injunction in which it agreed to be barred from sending text messages in violation of the TCPA. The proposed injunction, however, denied liability and the allegations made in the complaint, and disclaimed the existence of grounds for the imposition of an injunction. The settlement offer did not include attorney's fees, Campbell observed, because the TCPA does not provide for an attorney's-fee award. [The plaintiff] did not accept the settlement offer and allowed [the defendant's] Rule 68 submission to lapse after the time, 14 days, specified in the Rule.

Id. at 667–68. The court held that defendant's unaccepted offer did not moot plaintiff's individual claim, adopting Justice Kagan's analysis of this issue in Genesis Healthcare v. Symczyk, —— U.S. ——, 133 S.Ct. 1523, 185 L.Ed.2d 636 (2013):

> Justice KAGAN, writing in dissent, explained that she would have reached the threshold question and would have held that "an unaccepted offer of judgment cannot moot a case." Id., at ——, 133 S.Ct. at 1533. She reasoned: "When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. As every first-year law

student learns, the recipient's rejection of an offer "leaves the matter as if no offer had ever been made." Minneapolis & St. Louis R. Co. v. Columbus Rolling Mill, 119 U.S. 149, 151 [7 S.Ct. 168, 30 L.Ed. 376] (1886). Nothing in Rule 68 alters that basic principle; to the contrary, that rule specifies that "[a]n unaccepted offer is considered withdrawn.' Fed. Rule Civ. Proc. 68(b). So assuming the case was live before—because the plaintiff had a stake and the court could grant relief—the litigation carries on, unmooted." Ibid. We now adopt Justice Kagan's analysis.... [and] hold that [plaintiff's] complaint was not effaced by [defendant's] unaccepted offer to satisfy his individual claim.

Id. at 670. Although it held that an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case, the court did not rule on the issue of whether a claim can be mooted when "a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount. That question is appropriately reserved for a case in which it is not hypothetical." Id. at 672. Nor did the court decide the issue of whether a class action becomes moot when a class representative's claim for relief is mooted by the unconditional payment of the class representative's claim.

▇ Defendant argues that the situation before this Court presents the situation left undecided in Campbell–Ewald. He contends that, in contrast to Campbell–Ewald, the funds here were unconditionally tendered and, therefore, Plaintiff's individual and class claims have been extinguished. However, the Ninth Circuit recently rejected this argument in Chen v. Allstate Ins. Co., 819 F.3d 1136 (9th Cir. 2016) (Chen). In Chen, the defendant de-

posited "$20,000 in full settlement of [plaintiff's] individual monetary claims in an escrow account pending entry of a final District Court order or judgment directing the escrow agent to pay the tendered funds to [plaintiff], requiring [defendant] to stop sending non-emergency telephone calls and short message service messages to [plaintiff] in the future and dismissing this action as moot." The court held that tendered funds did not moot plaintiff's claims until the "district court entered judgment affording plaintiff complete relief." Moreover, the court stated that it would not "direct the district court to moot [plaintiff's individual claims] by entering judgment on them before [plaintiff] has had a fair opportunity to move for class certification." Id. at 1138; see also Gomez v. Campbell–Ewald Co., No. 10–cv–2007, slip op., at 3 (C.D.Cal. June 3, 2016) (plaintiff's "matter remains 'live' because he has not accepted the settlement offer, and because this Court has not entered judgment in his favor."). Here, although Defendant has offered to settle Plaintiff's individual claims, Plaintiff has rejected the offer. Further, absent this Court ordering the requested injunctive relief and entering judgment on Plaintiff's individual claims, they are not moot. The Court will not do so until Plaintiff has had a "fair opportunity to move for class certification." Chen, 819 F.3d at 1138–39. The motion to dismiss on mootness grounds is, therefore, DENIED.

## C. Sufficiency of Class Allegations

▇ Defendant points out that there is a discrepancy between Plaintiff's allegation that he received debt collection calls from Defendant, and his allegation that the class consists of persons who received calls "made by or on behalf of Defendant in order to promote its products or services"[1]

---

1. Plaintiff alleges two classes. One class consists of a "Robocall class," the other an "Au-

todialer class." Both consist of "[a]ll persons within the United States who (a) received a

and argues that the class allegations should be stricken because they cannot meet the Iqbal/Twombly plausibility requirement. Motion at 16. Further, Defendant contends that the class is a "fail safe" class, which is impermissibly "defined in a way that precludes membership unless the liability of the defendant is established." Kamar v. RadioShack Corp., 375 Fed. Appx. 734, 736 (9th Cir.2010).

Although efforts to strike class allegations at the pleadings stage are often denied as premature, see Yastrab v. Apple Inc., 2015 WL 1307163, at *8 (N.D.Cal. Mar. 23, 2015); In re Optical Disk Drive Antitrust Litig., 2012 WL 1366718, at *4 (N.D.Cal. Apr. 19, 2012); and Morris v. SolarCity Corp., 2016 WL 1359378, at *1 (N.D.Cal. Apr. 6, 2016), they must at least be plausible. Plaintiff has not alleged that he is a member of the proposed class, which is a basic requirement. Therefore, the Court grants the motion to strike on this ground with leave to amend to narrow the class definition.

With regard to Defendant's "fail-safe" argument, Plaintiff notes that the Ninth Circuit has not ruled out the use of such classes. See Vizcaino v. United States Dis. Court for Western Dist.Wash., 173 F.3d 713, 722 (9th Cir.1999) (rejecting the district court's reasoning that it was circular to define a class using a legal conclusion that was essential to an ultimate finding of liability). Moreover, to the extent such a class could prove to be problematic, the Court could exercise its discretion to redefine the class at the class certification stage. Heffelfinger v. Elec. Data Sys. Corp., 2008 WL 8128621, at *10 (C.D.Cal. Jan. 7, 2008). Therefore, the Court denies Defendant's motion to strike on this ground.

non-emergency telephone call; (b) on his or her cellular telephone or residential telephone line; (c) made by or on behalf of Defendant in order to promote its products or services; (d)

## III. REQUEST FOR STAY PENDING DECISION IN ACA INTERNATIONAL V. FCC

Defendant argues in the alternative that this action should be stayed pending the Court of Appeals for the District of Columbia's review of the Federal Communications Commission's ("FCC") 2015 Omnibus Order of the TCPA in ACA International, et al. v. FCC, No. 15–1211 (D.C. Cir. filed July 10, 2015) construing certain elements of the TCPA. The TCPA prohibits a caller from using an autodialer to place non-emergency phone calls to a cellular telephone number without the "called party's" prior express consent. 47 U.S.C. § 227(b)(1). In its declaratory ruling, the FCC concluded that the term "called party" means the "subscriber and customary user" of a cellular telephone number rather than the "intended recipient" of a call. RJN at ¶ 1-2, Ex. A (Declaratory Ruling at ¶ 74, 78). The FCC also concluded that the TCPA maintains a safe harbor for the first call that a caller places to a reassigned cellular phone number when the caller is unaware that a number has been reassigned. Finally, the FCC construed the term "autodialer" in a way that Defendant asserts could be interpreted as "including any equipment that potentially can be modified to generate random or sequential numbers." Id.

■ "A district court has discretionary power to stay proceedings in its own court under Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)." Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir.2005). In determining whether to grant a stay, the Court applies the following framework:

for whom Defendant had no record of prior express written consent...." FAC at ¶¶ 19-20 (emphasis added).

Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Id. at 1110. If there is "even a fair possibility" of harm to the opposing party, the moving party "must make out a clear case of hardship or inequity in being required to move forward." Landis, at 255, 57 S.Ct. 163. The burden is on the movant to show that a stay is appropriate. See Clinton v. Jones, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).

### A. Risk of Harm to Plaintiff

█ Defendant argues that the only possible harm to Plaintiff should the Court order a stay is a delay in his receipt of monetary damages or injunctive relief and this is an insufficient ground on which to deny a request. Bay Area Surgical Group, Inc. v. Aetna Life Ins. Co., 2014 WL 2759571, at *5 (N.D.Cal. June 17, 2014); Ramirez v. Trans Union, LLC, 2015 WL 6159942, at *2 (N.D.Cal. June 22, 2015). Plaintiff responds that more than a delay in obtaining relief is at stake. He asserts that the stay will be of indeterminate length because it is impossible to predict when the D.C. Circuit will decide the case and, as a result, he will be prejudiced in his ability to conduct meaningful discovery.

In a case involving this same issue, Lathrop v. Uber Techs., Inc., 2016 WL 97511, at *4 (N.D.Cal. Jan. 8, 2016), the district court denied a stay because its indeterminate length would "increase the difficulty of reaching class members, and increase the risk that evidence will dissipate." In reaching this conclusion, the district court noted that oral argument has not yet been scheduled in ACA International. Although that decision was issued in January, oral argument has still not been scheduled. Id.; see also Elikman v. Sirius Radio, Inc., 2015 U.S. Dist. LEXIS 171769, at *6-7 (N.D. Ill. Dec. 21, 2015) ("staying the case pending the D.C. Circuit's review would also subject [Plaintiff] to the inequity of indefinite delay, as it is unknown when the D.C. Circuit will rule.") The district court in Lathrop made the additional point that "the D.C. Circuit is unlikely to be the final step in the litigation over the FCC's 2015 Omnibus Order. Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to Plaintiff." Lathrop, 2016 WL 97511, at *4 (N.D.Cal. Jan. 8, 2016). In reply, Defendant points out that other courts have concluded that the prejudice as a result of a stay while waiting for the D.C. Circuit opinion is less compelling. See, e.g., Errington v. Time Warner Cable Inc., 2016 WL 2930696, at *4 (C.D.Cal. May 18, 2016) (possible prejudice to plaintiff "minimal" because "appeal before the D.C. Circuit is not likely to remain pending for an extended period of time").

Because there is no certain way to determine when a ruling will be forthcoming, and, as Lathrop points out, a decision by the D.C. Circuit may not be the end of litigation in ACA International, the Court concludes that there is a "fair possibility of harm" to Plaintiff because the length of the stay is an indefinite one.

### B. Hardship from Stay

█ When there is "even a fair possibility" of harm to the opposing party, the

moving party "must make out a clear case of hardship or inequity in being required to move forward." Landis, at 255, 57 S.Ct. 163. Defendant argues that it will suffer hardship if a stay is not granted because it will be forced to participate in a potentially unnecessary proceeding and incur unnecessary expenses as a result. Defendant states that the D.C. Circuit's decision on certain issues may affect its potential liability to Plaintiff. See Motion at 22. Plaintiff responds that this argument amounts to nothing more than a contention that Defendant will suffer hardship because it will be required to defend a suit, which "does not constitute a clear case of hardship or inequity within the meaning of Landis." Dister v. Apple–Bay E., Inc., 2007 WL 4045429, at *4 (N.D.Cal. Nov. 15, 2007). Plaintiff also points out that courts have rejected just this argument in the context of a request for a stay pending the D.C. Circuit's decision in ACA International. See, e.g., Nussbaum v. Diversified Consultants, Inc., 2015 WL 5707147, at *3 (D.N.J. Sept. 28, 2015) (party seeking stay fails to make out a clear case of hardship based only on avoiding "unnecessary discovery and motion practice"); Konopca v. Comcast Corp., 2016 WL 1645157, at *4 (D.M.J. Apr. 26, 2016) (same). As Defendant notes, in Konopca, the court noted that the prejudice resulting from an indefinite stay weighed "slightly" against granting a stay. Nevertheless, the court ruled against a stay based on this factor.

Defendant also argues that the D.C. Circuit's ruling will potentially eliminate a large class of potential plaintiffs and/or claims because it will decide three relevant issues: the definition of a "called party," the scope of the safe harbor exemption for calls such as those alleged in the Complaint and the definition of "autodialer." In addition, Defendant asserts that to the extent such a ruling does not eliminate plaintiffs and/or claims, it will nevertheless provide the Court with "helpful guidance" in interpreting the TCPA. Here, Defendant claims that Plaintiff was not the "intended recipient of the call," but was the "customary user" of the number and argues that under the FCC ruling, the call to a customary user such as Plaintiff falls within the TCPA. Second, Defendant maintains that the call to Plaintiff was a wrong number and, if there is a safe harbor for the first such call, then it is not liable for penalties for that first call. Finally, determining whether the equipment Defendant uses to place the calls falls within the TCPA may depend on the construction of the term "autodialer." While this is correct, there are issues in this case that must still be determined regardless of that ruling. As the court in Lathrop observed:

> [A]lthough the decision in ACA International may vacate portions of the 2015 FCC Order, discovery in this case will be required regardless of the outcome in that one. See 28 U.S.C. § 2342(1) (stating that court of appeals, including the D.C. Circuit, may "enjoin, set aside, suspend (in whole or in part) or [ ]determine the validity" of final FCC orders). Even if the D.C. Circuit were to modify or vacate the 2015 FCC Order, factual disputes, such as whether an ATDS [automated telephone dialing system] was used and whether text recipients provided their consent, will remain here. Although Uber may suffer hardship, in the form of additional discovery, the Court concludes that this potential hardship does not merit a stay in this case. Uber has not persuaded the Court that the potential changes in the playing field of this case—the size of which are currently unknowable—are so substantial or work such a hardship on Uber that a stay is necessary or appropriate.

Lathrop, 2016 WL 97511, at *4. This case raises similar issues involving the use of an ATDS and whether consent was obtained. Therefore, judicial economy is not served

by granting a stay. The Court DENIES Defendant's request.

## IV. REQUEST FOR JUDICIAL NOTICE

Defendant has requested that the Court take judicial notice of records and reports of the Federal Communications Commission and court filings in ACA International. Dkt. Nos. 29-4, 35. Plaintiff does not oppose this request. Judicial notice is appropriate pursuant to Fed. R. Evid. 201(b) and, therefore, this request is GRANTED.

## V. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss in part and GRANTS it in part. Within two weeks of the date of this Order, Plaintiff may amend the Complaint to cure deficiencies in its description of the proposed class. The Court DENIES Defendant's Motion to Stay and GRANTS Defendant's Request for Judicial Notice.

**IT IS SO ORDERED.**