UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

STARLA SMITH, on behalf of E.S.D,
a minor child,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

Defendant-Appellee.

No. 05-6006
(D.C. No. 04-CV-193-P)
(W.D. Okla.)

ORDER AND JUDGMENT  *

Before **LUCERO** , **ANDERSON** , and **BRORBY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On October 24, 2001, Plaintiff Starla Smith filed an application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act on behalf of her minor daughter, E.S.D., who was born in 1986. The application alleged disability on the basis of a learning disability that limits E.S.D.'s daily activities by making her confused and unable to communicate fully. Aplt. App. Vol. II, at 49. The claimed onset date is listed in the record as January 1, 1995, or September 12, 1997. *Id.* at 41, 49.

The Social Security Administration denied the application initially and on reconsideration. An administrative law judge ("ALJ") held a hearing at which Smith testified but E.S.D. did not. In a written decision dated May 28, 2003, the ALJ determined that E.S.D. had borderline intellectual functioning that was severe but did not meet or medically or functionally equal the criteria for any impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "listings"). Therefore, the ALJ concluded that E.S.D. was not disabled. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481. The district court affirmed, and Smith appealed. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we **REVERSE**.

This court reviews "the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Watkins v. Barnhart*, 350 F.3d 1297,

1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). "[B]ecause our review is based on the record taken as a whole, we will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id.* (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). "We may neither reweigh the evidence nor substitute our discretion for that of the [Commissioner]." *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

On appeal, Smith argues that the ALJ (1) made an insufficient credibility determination concerning her testimony, (2) ignored significant probative evidence, and (3) made a conclusory finding that E.S.D.'s learning disability did not meet a listed impairment. She also argues that the evidence the ALJ ignored shows that E.S.D. meets or functionally equals one of the listings; therefore, the ALJ's contrary conclusion is not supported by substantial evidence.

## I. General Regulatory Background

A child is considered disabled if she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12

months." 20 C.F.R. § 416.906. A child's disability claim is evaluated in a three-step process. *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001). The parties do not dispute that E.S.D. is not working and has severe impairments, thus satisfying the first two steps, *see id.* At step three of the process, the agency considers whether the child has an impairment that "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). If she does and the duration requirement is met, the agency will find the child disabled. *Id.*

The parties focus on one specific listing, § 112.05(E) of 20 C.F.R., Part 404, Subpart P, Appendix 1, Part B ("listing 112.05(E)" or "§ 112.05(E)"). To meet listing 112.05(E), a child between the ages of three and eighteen must have a "valid verbal, performance, or full scale IQ of 60 through 70." § 112.05(E). In addition, the child must have a marked limitation or difficulty in one of three functional areas described in another listing. *See* § 112.05(E)(2). Those areas are (i) social functioning, (ii) personal functioning, and (iii) concentration, persistence, or pace. 20 C.F.R., Part 404, Subpt. P, App. 1, Part B, § 112.02(B)(2)(b)-(d). In the context of the listings, a limitation is "marked" if "several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability

to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." *Id.,* § 112.00(C).

Functional equivalence[1] is determined by analyzing six domains:[2] "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and . . . (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). If the child is extremely limited in one domain, or markedly limited in two domains, the impairment is functionally equivalent to the relevant listing, *id.* § 416.926a(a), and the child is disabled, *id.* § 416.924(a). As used in the functional equivalency determination, a limitation is marked if the "impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A limitation is extreme if the "impairment(s) interferes very seriously with [the] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). Day-to-day functioning may be seriously or very seriously limited when an impairment either "limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities." *Id.* §§ 416.926a(e)(2)(i), 416.926a(e)(3)(i).

---

[1]    We note that medical equivalence is not at issue in this case.

[2]    "Domains" are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

Here, the ALJ found that E.S.D.'s impairment did not meet any listing. He also found that it was not functionally equal to any listing because she was markedly limited in only one domain, acquiring and using information, less than markedly limited in two other domains, attending to and completing tasks and interacting and relating to others, and not limited in the other three domains.

## II. Credibility Finding

The sole statement in the ALJ's decision concerning credibility is set forth in the list of findings: "Subjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision." Aplt. App. Vol. II, at 19. Smith argues that this is a legally insufficient finding regarding the credibility of her testimony about E.S.D.'s functioning, and correctly observes that the ALJ referred to her testimony only once, in relation to the fifth domain: "The claimant's mother testified at the hearing that the claimant could care for her personal needs when reminded to do so." *Id.* at 17. Her testimony, however, also includes statements that E.S.D. does poorly in school, completes assignments at a much slower pace than a "normal person," is unable to write a letter because she cannot focus that long, is unable to remember and carry out two assigned chores, is unable to procure items on a list from a store because she forgets the list is in her pocket, cannot stay on task, does not participate in any sports or hobbies but likes to sit in her room and "just

-6-

look," has no friends, has disciplinary problems at school, does not get along with her classmates, and never leaves the house by herself. *Id.* at 136-143.

The Commissioner responds that the ALJ was not required to make a credibility finding at all because Smith did not raise subjective complaints inconsistent with the record and the disability determination was not substantially based on the credibility of subjective complaints. She also argues that, because the testimony was consistent with the record, the ALJ took it into account, evidencing that he did not reject or discredit it. A threshold question, then, is whether or not the ALJ was required to make a credibility finding.

In *Briggs* , we considered an ALJ's statement that the testimony of the claimant and his mother was "unconvincing, not substantiated by objective medical findings, and credible only to the extent that claimant's impairments have not produced marked and severe limitations." *Briggs* , 248 F.3d at 1239 (quotation omitted). We held that, when a claimant is a child who cannot "adequately describe h[er] symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition. 20 C.F.R. § 416.928(a). In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, [3] just as he would if the child were testifying." *Id.* (alteration

---

[3] We note that, although it was the parent who was the "person most familiar with the child's condition" in *Briggs* , this might not always be the case.

and footnote added). We concluded that the ALJ's finding was insufficient to meet his burden because it lacked explanation and a significant portion of the record supported the testimony. *Id.*

Contrary to the Commissioner's position, we conclude that the ALJ was required to make a credibility determination regarding Smith's testimony. Consistent with 20 C.F.R. § 416.928(a), the ALJ accepted Smith's testimony. Under *Briggs* , therefore, the ALJ was required to "make specific findings concerning the credibility of the parent's testimony, just as he would if the child were testifying." *Id.* Social Security Ruling ("SSR") 96-7p provides guidelines for credibility assessments and "emphasizes" the following:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96-7p, 1996 WL 374186, at *1. Here, E.S.D.'s established borderline intellectual functioning and learning disability, which the ALJ found to be severe, could reasonably be expected to produce the limitations on her functioning that Smith described. Therefore, the ALJ was required to consider the effect of those symptoms on E.S.D.'s functioning, which in turn required a credibility finding.

Although we agree that subjective complaints were not at issue, we are not persuaded that a credibility determination was unnecessary. Credibility determinations concern statements about symptoms, which are "an individual's own description of his or her physical or mental impairments." *Id.* at *2 (citing 20 C.F.R. § 416.928(a)). Smith testified about her observations of E.S.D.'s functioning, the central focus of the disability determination. Under *Briggs*, the ALJ was required to accept that testimony as if E.S.D. were supplying it. Whether Smith testified credibly is an inquiry that must be made in conjunction with determining the weight, if any, to accord to that testimony.

Nor are we persuaded that a credibility determination is unnecessary when testimony is consistent with the record evidence. This was precisely the case in *Briggs*, where we stated that the ALJ was required to explain why he found testimony not credible because significant portions of the record supported it. *Briggs*, 248 F.3d at 1239. We also refuse to read an acceptance of Smith's testimony into the body of the ALJ's decision based on an alleged consistency between the record evidence and the testimony. Smith's statements concerning E.S.D.'s slowness or inability to complete tasks is contrary to the sole piece of evidence the ALJ relied on in support of his finding that E.S.D. is less than markedly limited in the second domain, attending and completing tasks. As discussed more fully below, this part of the testimony is consistent with a 1997

assessment that the ALJ did not address properly. Also, portions of Smith's testimony related to the third domain, interacting and relating with others, evidence limitations that are not described in the same detail or reflected to the same degree elsewhere in the record. It is apparent that the ALJ did not accept Smith's testimony in its entirety because he did not resolve these inconsistencies.

Having concluded that the ALJ was required to make a credibility determination regarding Smith's testimony, we turn to the second part of our inquiry on this issue: whether the ALJ's credibility determination was adequate. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, a credibility determination "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). Where "[a] significant portion of the record evidence supports the testimony, . . . the ALJ must explain why he has determined that the testimony is not credible. Standard boilerplate language will not suffice." *Briggs*, 248 F.3d at 1239. *See also* SSR 96-7p, 1996 WL 374186, at *4 (stating that credibility determinations "must be grounded in the evidence and articulated in the determination or decision").

The ALJ's finding, quoted above, is not "closely and affirmatively linked to substantial evidence," but is the type of "conclusion in the guise of findings" that we have rejected. *See Kepler*, 68 F.3d at 391. Furthermore, it is evident that his finding is not related to Smith's testimony at all because it pertains to the credibility of "subjective complaints." As the Commissioner argues and we agree, Smith's testimony did not concern subjective complaints. Instead, it concerned Smith's observations of E.S.D.'s functioning. The purported credibility finding simply has no meaning as applied to Smith's testimony. Rather, it is the type of "standard boilerplate language" that renders meaningful review impossible. *See Briggs*, 248 F.3d at 1239.

### III. Ignoring Contradictory Evidence

Smith next argues that the ALJ erred by ignoring significant probative evidence that contradicted his findings. Although an ALJ need not consider every piece of evidence in the record, he must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Stated differently, "[i]t is improper for the ALJ to pick and choose among . . . reports, using evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Nonetheless, "the need for express

-11-

analysis is weakened" when an ALJ does not have to reject or weigh evidence unfavorably. *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004).

We agree with Smith as to most, but not all, of the disputed evidence, several pieces of which are related. The ALJ relied on portions of a 1997 multidisciplinary evaluation to support his finding that E.S.D. is markedly limited in the first domain, acquiring and using information, but overlooked other portions stating that E.S.D. worked "more slowly than others in class," had poor response for following directions, and had difficulty staying on task and completing assignments.[4] Aplt. App. Vol. II, at 126-27. The ALJ also failed to discuss portions of Smith's testimony concerning E.S.D.'s inability to complete tasks. These observations are relevant to the second domain, attending and completing tasks, as well as to the consideration of E.S.D.'s concentration,

---

[4] The Commissioner argues that there is evidence in the record that a previous application for benefits was denied on February 8, 1999, *see* Aplt. App. Vol. II, at 68 (disability report indicating such denial), and that whether or not E.S.D. was disabled prior to that date is barred by res judicata pursuant to 20 C.F.R. § 416.1457(c)(1). That regulation provides that an ALJ may refuse to consider any issue on which the agency has made a previous determination or decision about a claimant's rights that has become final. We find it impossible to determine, based on the record, whether a previous application was denied and, if so, whether it was on any of the same issues. Therefore, we see no res judicata bar to the use of records from 1997 in our analysis. Additionally, the ALJ relied on the 1997 report to support his findings and never referred to a prior application. Although an SSI applicant must show disability during the pendency of the application, *see* 20 C.F.R. §§ 416.330, 416.335, evidence concerning the chronic nature of a mental impairment is a factor in the evaluation of mental impairments, *see id.* § 416.920a(c)(1).

-12-

persistence, or pace relevant to listing 112.05(E). Relying on a report prepared by Dr. Lynch, Ph. D., concerning the results of a 2002 IQ test, the ALJ stated that E.S.D. "retained letter-symbol combinations in immediate recall and did not require back referencing, [and] she completed tasks well within the timeframe allowed." *Id.* at 17. This was the only evidence the ALJ cited in his discussion of the second domain. His failure to reject or weigh unfavorably the contrary 1997 assessment and Smith's testimony was a legal error.

Smith also contends that the ALJ erred by relying only on the one portion of Dr. Lynch's report discussed above because the remainder of his report indicates great difficulty in completing tasks. We disagree. The ALJ discussed the remainder of Dr. Lynch's report in some detail at the outset of his discussion of the evidence, *see id.* at 15. Nothing in that report indicates that E.S.D. has great difficulty completing tasks. Dr. Lynch's opinion that E.S.D. has "noticeable weaknesses in verbal skills," *id.* at 129, appears relevant to the first domain, acquiring and using information, not the second, because it concerns E.S.D.'s verbal skills, not her attention and ability to complete tasks. This opinion is consistent with the other evidence of record related to the first domain, and we conclude that, other than the relationship of Dr. Lynch's opinion to evidence the ALJ overlooked, the ALJ properly considered the opinion.

The third piece of evidence that Smith points to is a May 2002 individualized education program assessment, denoted as Exhibit 1F in the record. The ALJ referred to this assessment in support of his determination that E.S.D. has marked limitations in the first domain, acquiring and using information: "Claimant has problems remembering and comprehending information (Exhibits 1F and 2F)." *Id.* at 17.

We conclude that, to the extent Exhibit 1F is relevant to the first domain, the ALJ properly considered it. However, information contained in this exhibit appears relevant to the third domain, interacting and relating to others, and the social functioning area relevant to listing 112.05(E). The extent of the ALJ's third domain analysis reads: "Claimant has some communication problems, and has received counseling on social skills to participate in community activities. School records show she is free to participate in extra-curricular activities (Exhibit 2F)." *Id.* The assessment indicates that E.S.D. has "numerous behavior problems. . . . [S]he has a difficult time following directions, she is often tardy to class . . . [and] seems to want to do as she pleases irregardless of class rules and procedures." *Id.* at 82.

The ALJ did not reference this part of the assessment in his discussion of the third domain or listing 112.05(E), or in his preliminary recitation of the evidence. We find it to be significantly probative evidence that the ALJ was

required to reject or weigh unfavorably. It is not merely consistent with the other evidence the ALJ cited in his third domain analysis. Instead, the assessment provides information about E.S.D.'s ability to cooperate with others and comply with rules, which, as the ALJ recognized, are components of the third domain, *id.* at 17. Likewise, the ALJ overlooked portions of Smith's testimony describing E.S.D.'s ability to interact with others that have significant probative value to the third domain analysis and listing 112.05(E)'s social functioning area.

## IV. Disability Findings

Smith's remaining arguments are related. She contends that, without any analysis, the ALJ determined E.S.D. did not meet listing 112.05(E), and that the evidence he ignored, discussed in the preceding section, shows that E.S.D. meets or functionally equals the listing. Therefore, she concludes, substantial evidence does not support his conclusion that E.S.D. is not disabled.

In his decision, the ALJ discussed some of the evidence and then stated:

The claimant does not have an impairment that meets or medically equals the criteria of any of the listed impairments of Appendix 1. The undersigned has considered the listings in general and specifically listing 112.05. The claimant alleged a learning disability since January 1, 1995. Testing in January 2002 revealed a verbal IQ of 60, which indicates a verbal learning disability may be present. Her full-scale performance is in the borderline range (Exhibit 4F). There is no evidence to indicate the claimant has an impairment of listing level severity.

Aplt. App. Vol. II, at 16.

-15-

It is evident that the ALJ concluded E.S.D.'s verbal IQ score of 60 met the first prong of listing 112.05(E), but failed to address the second prong, whether E.S.D. is markedly limited in one of the three functional areas relevant to the listings: social functioning, personal functioning, or concentration, persistence, or pace, *see* 20 C.F.R., Part 404, Subpt. P, App. 1, Part B, § 112.02(B)(2)(b)-(d). The last sentence of the foregoing quote does not fulfill the ALJ's requirement to "make a specific finding as to the degree of limitation in each of the functional areas" used to determine whether a mental impairment meets a listing, 20 C.F.R. § 416.920a(e), and is "a bare conclusion [that] is beyond meaningful judicial review," *Clifton*, 79 F.3d at 1009. Furthermore, the discussion of the functional equivalence domains does not serve as a substitute for the requisite analysis of the three functional areas. As the Commissioner explained in publishing revised final rules for determining childhood disability claims, the "domains are specifically designed for determining functional equivalence and are *completely delinked from the mental disorders and other listings*." 65 Fed. Reg. 54747, 54755 (Sept. 11, 2000) (emphasis added). In any event, the ALJ's functional equivalency findings themselves are flawed because, as discussed above, he did not address some of the significantly probative evidence properly.

Based on the foregoing, we conclude that substantial evidence does not support the ALJ's determination because he failed to address the second prong of

listing 112.05(E), and he overlooked evidence that "fairly detracts" from the weight to be accorded to the evidence he relied on in making his functional equivalency findings, *see Hamlin*, 365 F.3d at 1214. However, we do not weigh the evidence ourselves to determine whether E.S.D.'s impairment meets or functionally equals a listed impairment. That is for the ALJ to determine on remand.

## Conclusion

The judgment of the district court is **REVERSED**, and the case is

**REMANDED** to the district court with directions to remand the case to the

agency for further proceedings consistent with this Order and Judgment.

Entered for the Court


Stephen H. Anderson
Circuit Judge