Jamie C. SAVINO–NIXON, Plaintiff,

v.

Michael J. ASTRUE,[1] Commissioner of Social Security, Defendant.

No. 06–2043–JWL–JTR.

United States District Court, D. Kansas.

March 9, 2007.

---

1. On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Jean C. Owen, Law Office of Jean C. Owen, for Plaintiff.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for Michael J. Astrue.

## ORDER

LUNGSTRUM, District Judge.

On February 21, 2007, a Report and Recommendation (doc. 7) was issued by the Honorable John Thomas Reid, Magistrate Judge. The time in which to file objections has passed and to date no objections have been filed. The court has re-

viewed the Report and Recommendation and finds that it should be adopted.

IT IS THEREFORE ORDERED BY THE COURT that the Report and Recommendation (doc. 7) is adopted and the Commissioner's decision is REVERSED and this case is REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

## REPORT AND RECOMMENDATION

REID, United States Magistrate Judge.

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income benefits (SSI) when plaintiff was a child. The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be REVERSED and the case be REMANDED for further proceedings in accordance with this opinion.

## I. Background

On June 24, 2003, an SSI application was filed on behalf of plaintiff for benefits as a child. (R. 17, 66–70). Plaintiff became eighteen years old on Jan. 31, 2004, and the decision at issue relates only to SSI benefits as a child before that date. (R. 17).

The application for SSI was denied initially and upon reconsideration. (R. 27–30). An untimely request for hearing was filed (R. 17, 43), good cause was found for the late filing (R. 17, 50), and a hearing before an Administrative Law Judge (ALJ) was held on Feb. 10, 2005. (R. 149–75). Plaintiff was represented by an attorney at the hearing, and testimony was taken from plaintiff and a vocational expert. (R. 149, 150).

On Apr. 1, 2005, the ALJ issued a decision finding that plaintiff has never engaged in any substantial gainful activity, that plaintiff had severe impairments of a history of eye surgery and impaired visual acuity, and that plaintiff's condition did not meet, medically equal, or functionally equal the severity of the listings. (R. 17–24). The ALJ denied the application for SSI. (R. 24).

Plaintiff sought and was denied Appeals Council review of the decision. (R. 11–13, 5–7). Therefore, the ALJ decision is the final decision of the Commissioner. (R. 5); *Smith ex rel E.S.D. v. Barnhart,* 157 Fed. Appx. 57, 59 (10th Cir.2005)(citing 20 C.F.R. § 416.1481). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *see also, Brown v. Callahan,* 120 F.3d 1133, 1134 (10th Cir.1997) (court determines whether the "decision (1) is free of legal error and (2) is supported by substantial evidence") (quoting *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996)). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir.1988); *Brown,* 120 F.3d at 1134. The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." *White,* 287 F.3d at 905 (quoting *Casias v. Sec'y of Health & Human Serv.,* 933 F.2d 799, 800 (10th Cir.1991)). The determination of whether substantial evidence sup-

ports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. *Gossett,* 862 F.2d at 804–05; *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989).

The Commissioner has provided a three-step evaluation process to determine whether a child is disabled. 20 C.F.R. § 416.924 (2005); *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir.2001); *see also, Brown,* 120 F.3d at 1134–35 & n. 2 (recognizing that the four-step evaluation process had been changed by the Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104–193, 110 Stat. 2105 (codified at 42 U.S.C. § 1382c(a)(3)(C)) and the Commissioner had amended the regulations accordingly). Step one requires the Commissioner to determine whether the claimant is performing substantial gainful activity. If so, she cannot be found disabled. 20 C.F.R. § 416.924(b); *Briggs,* 248 F.3d at 1237; *Brown,* 120 F.3d at 1134, n. 2. The Commissioner determines at step two whether the claimant has an impairment or combination of impairments which is "severe" within the meaning of the Act. If not, she cannot be found disabled. *Id.* at § 416.924(c); *Briggs,* 248 F.3d at 1237; *Brown,* 120 F.3d at 1134, n. 2. Finally, at step three, the Commissioner determines whether the claimant's impairment(s) meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1, and whether it meets the duration requirement. If not, she cannot be found disabled. *Id.* at § 416.924(d); *Briggs,* 248 F.3d at 1237; *Brown,* 120 F.3d at 1134, n. 2.

■■■ If the child claimant's condition meets or medically equals the severity of a listed impairment, that impairment is disabling. *Briggs,* 248 F.3d at 1237. To establish that her condition meets a listing, claimant "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet *all* of the specified medical criteria' contained in a particular listing." *Riddle v. Halter,* 10 Fed.Appx. 665, 667 (10th Cir.2001) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in *Zebley* )). Medical equivalence to a listing may be established by showing medical findings related to claimant's impairment(s) that are at least of equal medical significance as a listing. 20 C.F.R. § 416.926(a). Medical equivalence is based only upon medical evidence; that is, upon medical opinions, or medical findings supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

■■■ A finding of functional equivalence to a listing also requires a finding of disability. *Briggs,* 248 F.3d at 1237. To determine functional equivalence, the Commissioner considers how the child functions in six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Briggs,* 248 F.3d at 1238 (quoting 20 C.F.R. § 416.926a(b)(1)(i)-(vi)). Functional equivalence will be found if claimant's impairment(s) is of listing level severity. That is, if the impairment(s) results in an "extreme" limitation in at least one domain or "marked" limitations in at least two domains. *Id.* at 1237 n. 1 (citing 20 C.F.R. § 416.926a(a)).

Plaintiff claims the ALJ erred in determining whether her impairments are functionally equivalent to the listings, and erred in evaluating the opinions of her

treating optometrist and her school psychologist. The Commissioner argues that the ALJ properly considered and evaluated the treating source opinions and determined that plaintiff's impairments were not functionally equivalent to a listing, and that substantial evidence in the record supports the ALJ's determinations. Because evaluation of the treating source opinions will affect the evaluation of functional equivalence, the court will first consider plaintiff's arguments regarding evaluation of the treating source opinions.

## III. Evaluation of Medical Opinions

### A. *Standard for Evaluating Medical Opinions*

 "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 416.927(a)(2). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations. *Id.* § 416.927(d); *Soc. Sec. Ruling* (SSR) 96–5p, West's Soc. Sec. Reporting Serv., Rulings 123–24 (Supp. 2006).

The regulations define three types of "acceptable medical sources;" "treating sources," "nontreating sources" who have examined the claimant, and "nonexamining sources." 20 C.F.R. § 416.902. Licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are included within the meaning of "acceptable medical sources." *Id.,* § 416.913(a). "School psychologists" are "acceptable medical sources" "for purposes of establishing mental retardation, learn-

ing disabilities, and borderline intellectual functioning only." *Id.,* § 416.913(a)(2).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition. *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003). "If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [ (1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ (2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 416.927(d)(2); *see also,* SSR 96–2p, West's Soc. Sec. Reporting Serv., Rulings 111–15 (Supp.2006).

 If a treating source opinion is not given controlling weight, all medical opinions will be weighed in accordance with the regulatory factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 416.927(d)(2–6); *see also Goatcher v. Dep't of Health & Human Serv.,* 52 F.3d 288, 290 (10th Cir.1995).

 Evidence from nonexamining sources such as state agency physicians and medical experts is considered opinion evidence. 20 C.F.R. § 416.927(f). ALJ's are not bound by such opinions but must consider them, except for opinions regarding the ultimate issue of disability. *Id.,*

§ 416.927(f)(2)(i). Such opinions must be evaluated using the regulatory factors, and the decision must explain the weight given those opinions. *Id.,* § 416.927(f)(2)(ii & iii). In general, the opinions of treating sources will be given the greatest weight, those of nontreating sources will be given lesser weight, and those of nonexamining sources will be given the least weight. *Doyal,* 331 F.3d at 762; *Robinson v. Barnhart,* 366 F.3d 1078, 1084 (10th Cir.2004); *Talbot v. Heckler,* 814 F.2d 1456, 1463 (10th Cir.1987) (citing *Broadbent v. Harris,* 698 F.2d 407, 412 (10th Cir.1983), *Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982), and *Wier ex rel. Wier v. Heckler,* 734 F.2d 955, 963 (3d Cir.1984)).

The regulations provide that in addition to evidence from "acceptable medical sources," the Commissioner may use evidence from "educational personnel" such as school teachers and counselors regarding the severity of plaintiff's impairments and how plaintiff typically functions compared to other children her age who do not have impairments. 20 C.F.R. § 416.913(d).

### B. The Parties' Arguments and the ALJ's Findings

Plaintiff claims the ALJ improperly rejected or ignored the opinions of her optometrist, Dr. Pizzo, and her school psychologist Mr. Smilie. She claims the ALJ failed to state the weight given to the opinions of Dr. Pizzo and Mr. Smilie, failed to state specific, legitimate reasons, as required by case law, for rejecting the opinions, and gave excessive weight to the opinions of the nonexamining state agency physicians. The Commissioner argues that the ALJ properly considered and evaluated the opinions. Specifically, he argues that the ALJ relied extensively on Mr. Smilie's opinions, and that the ALJ's functional equivalence findings are consistent with the opinions of both Dr. Pizzo and Mr. Smilie.

The ALJ discussed as "medical evidence" one report prepared by Mr. Smilie which indicated that on Nov. 22, 2000, plaintiff had a verbal IQ score of 139, a performance IQ of 131, and a full-scale IQ of 138, that plaintiff was taking a "complicated academic schedule" including Geometry and Algebra II taken concurrently, and that plaintiff should be considered for the academically gifted program. (R. 19)(citing Ex. 7E (R. 116, 117)). He also discussed a "teacher's report, dated August 8, 2003" which was prepared by Mr. Smilie. (R. 19). He noted that in the teacher's report Mr. Smilie reported plaintiff had very serious problems reading and comprehending written material and learning new material, very serious problems moving and manipulating things, and a serious problem demonstrating strength, coordination, and dexterity. *Id.* (citing Ex. 6E (R. 104–15)).

The ALJ summarized Dr. Pizzo's opinions and specifically noted Dr. Pizzo opined that plaintiff's visual disability had a profound effect on her ability to function, that she would need assistance in most activities due to her visual limitations, that she needed vision enhancement aids, and that she would benefit from visual rehabilitation training. (R. 19)(citing Ex. 2F (R. 125–31)). The ALJ cited Mr. Smilie's reports when discussing the domains of "Acquiring and Using Information," and "Moving About and Manipulating Objects." (R. 22). He cited Dr. Pizzo's report when discussing the domain of "Health and Physical Well–Being." (R. 23).

### C. Analysis

The ALJ's distinction between Mr. Smilie's two reports as "medical evidence" and as a "teacher's report" reflects that in certain circumstances the school psycholo-

gist is an "acceptable medical source" whose opinions regarding intellectual functioning are "medical opinions" and must be weighed as such, but, otherwise Mr. Smilie is a "school teacher or counselor," whose opinions regarding issues other than intellectual functioning must be weighed as the opinions of "educational personnel" which relate to the severity of plaintiff's impairments and how plaintiff typically functions compared to other children her age who do not have impairments. This understanding is confirmed by the fact that the report discussed as "medical evidence" in the decision relates to IQ scores and to Mr. Smilie's opinions regarding plaintiff's intellectual functioning, (R. 116–17); *compare* (R. 19)(citing Ex. 7E); whereas the report discussed as "a teacher's report," is a "Request for Administrative Information" sent by the Social Security Administration to the Fort Scott High School, and includes a response form entitled "Teacher Questionnaire" completed by Mr. Smilie. (R. 104–15); *compare* (R. 19)(citing Ex. 6E). Therefore, the court will recognize the difference recognized by the ALJ when considering whether Mr. Smilie's opinions were properly evaluated.

The court cannot find that the ALJ rejected or ignored the opinions of the treating sources, Dr. Pizzo and Mr. Smilie. The ALJ specifically discussed each report and the opinions contained therein. (R. 19). He did not state that he rejected the opinions. Moreover, as the Commissioner argues, the ALJ cited the opinions in making his functional equivalence findings. (R. 22–23).

■ However, as plaintiff argues, the ALJ "did not explain what evidentiary weight he gave, if any, to the opinions of Dr. Pizzo and Mr. Smilie in ruling upon Plaintiff's functional equivalence." (Pl.Br., 15). As plaintiff argues, the ALJ's findings regarding the six domains (with the

exception of one) were identical to the findings of the nonexamining state agency physicians. *Id.* The ALJ, however, did not state the evidentiary weight he gave to the opinions of the state agency physicians or to the opinions of any of the medical sources (including Mr. Smilie).

Here, the ALJ summarized the evidence, including Dr. Pizzo's medical opinions, Mr. Smilie's medical opinions, and Mr. Smilie's opinions in the teacher's report, evaluated the credibility of plaintiff's allegations, and stated his assessment of each domain. (R. 19–23). However, he did not state or explain the weight given to any of the medical opinions and did not state whether, or explain why, the treating source opinions were not given controlling weight. He did not explain if the opinions of the state agency physicians were given greater weight than the treating source opinions, and, if so, he did not examine those opinions and explain why they outweigh the opinions of the treating physician as required by case law. *Reyes v. Bowen,* .845 F.2d 242, 245 (10th Cir.1988). He did not explain how the evidence supports, detracts from, or leads to the assessment in each domain. All of the analysis was made in the ALJ's mind, making his decision unreviewable by the court. The ALJ "did not connect the dots, so to speak," between the evidence he summarized and the conclusion he reached. *Kency v. Barnhart,* No. 03–1190–MLB, slip op. at 7, (D.Kan. Nov. 16, 2004).

In order to review such a case the court would be required to weigh the evidence itself, evaluate the relative weight to be accorded the opinions, and resolve any inconsistencies and ambiguities to see if it could reach the same decision as the ALJ. The court is without jurisdiction to make such an inquiry. Its jurisdiction is limited to a review of the Commissioner's decision to determine whether the Commissioner

applied the correct legal standards and whether substantial evidence supports the decision.

The Commissioner asks the court to affirm the decision below, arguing that the ALJ's functional equivalence findings are consistent with Dr. Pizzo's opinions and that the ALJ relied upon Mr. Smilie's opinions in making those findings. (Comm'r Br., 4–5). The Commissioner cites to examples in the decision and in the evidence from which she argues that the ALJ's findings are consistent with the physician's and school psychologist's opinions. *Id.*

The reason the court may not accept the Commissioner's argument is that the ALJ did not make it. The court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir.2005) (citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004); and *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943)); *see also, Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir.1985). Thus, the court may not affirm on the basis of the Commissioner's argument, which was not the basis for the ALJ's decision. Remand is necessary for the Commissioner to properly consider the opinions and properly explain the weight given to them.

## IV. Determination of Functional Equivalence

Plaintiff claims the ALJ erred in determining whether her impairments are functionally equivalent to the listings. (Pl.Br., 7–12). Specifically, plaintiff argues that the ALJ erred in evaluating the domains of "Acquiring and Using Information," "Moving About and Manipulating Objects," and "Caring for Yourself." (Pl.Br., 9–10).

Plaintiff argues that a proper evaluation of Mr. Smilie's opinions requires a finding that plaintiff has "extreme" limitations in "Acquiring and Using Information," and "Moving About and Manipulating Objects," and "marked" limitations in "Moving About and Manipulating Objects," and "Caring for Yourself," in addition to the ALJ's finding that plaintiff has a "marked" limitation in the domain of "Health and Physical Well–Being."

Because the court may not weigh Mr. Smilie's opinions in the first instance, and because the court recommends the case be remanded for a proper evaluation of those opinions (both medical opinions, and opinions in the teacher's report), the court is unable to find that Mr. Smilie's opinions require particular findings in particular instances. Nonetheless, the court agrees that the ALJ improperly evaluated the three domains at issue, and recommends remand for a proper evaluation of each domain.

An administrative agency must give reasons for its decisions. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). (citing *Reyes*, 845 F.2d at 244). Here, the ALJ did not give adequate reasons for his findings regarding the three domains of functioning at issue.

With regard to the domain "Acquiring and Using Information," the ALJ noted plaintiff "functions in the very superior range of intellectual functioning." (R. 22). He noted Mr. Smilie's statement that plaintiff's achievement scores were "somewhat low," and "that a timing factor might be a problem because of her vision." *Id.* He concluded, "Therefore, in this domain, the claimant has 'less than marked' limitations." *Id.*

The ALJ concluded plaintiff's limitations are "less than marked," but did not explain how that is so—despite low achievement

scores and plaintiff's severe vision problems as noted by Mr. Smilie and admitted by the ALJ. Moreover, earlier in the decision, the ALJ acknowledged Mr. Smilie's opinion that plaintiff has "a very serious problem reading and comprehending written material and learning new material if vision [is] required." (R. 19)(citing Ex. 6E).[2] However, the ALJ did not explain how he concluded plaintiff has "less than marked" limitations in this domain despite Mr. Smilie's opinion in the teacher's report that plaintiff has "very serious" and "obvious" problems. Again, the ALJ did not "connect the dots," and such a conclusory finding requires remand for the Commissioner to properly explain his decision. He must give reasons for finding that Mr. Smilie's suggested limitations equate with the ALJ's finding of "less than marked" limitations, or reasons for discounting Mr. Smilie's opinion as a teacher or counselor.

In the domain of "Moving About and Manipulating Objects," the ALJ's total analysis is quoted here: "The claimant's teacher, Mr. Smilie, noted significant problems moving objects due to vision limitations (Exhibit 6E). Therefore, in this domain, the claimant has 'less than marked' limitations." (R. 22). The ALJ concluded that "significant problems moving objects due to vision limitations" is a "less than marked" limitation in this domain, but does not explain how that conclusion was reached.

■ Moreover, in this domain, Mr. Smilie opined that plaintiff has a "very serious problem" moving and manipulating things and a "serious problem" demonstrating strength, coordination, and dexterity. (R. 111). The ALJ acknowledged these opinions in the decision (R. 19), but without any explanation summarized the

limitations as "significant problems" in his analysis regarding this domain, and concluded they constituted "less than marked" limitations. (R. 22). Once more, the ALJ did not "connect the dots," and such a conclusory finding requires remand for the Commissioner to properly explain his decision. He must give reasons for finding that Mr. Smilie's suggested limitations equate with the ALJ's finding of "less than marked" limitations, or reasons for discounting Mr. Smilie's opinion.

The ALJ commits the same error in evaluating the domain of "Caring for Yourself (Self-care):"

> The issue in this domain is how well the child maintains a healthy emotional and physical state including appropriately seeking and maintaining physical and emotional wants and needs; coping with stress and environmental changes; and caring for her own health, possessions, and living area. The claimant has no limitations in this domain.

(R. 22).

■ In evaluating plaintiff's functioning in this domain, Mr. Smilie opined that plaintiff has "a serious problem" in both "Handling frustration appropriately," and in "Being patient when necessary." (R. 112). The ALJ did not acknowledge these opinions anywhere in the decision, and concluded plaintiff has no limitations in this domain without accounting for Mr. Smilie's opinions. Remand is necessary for the Commissioner to properly account for Mr. Smilie's opinions as discussed above.

**IT IS THEREFORE RECOMMENDED** that JUDGMENT be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the decision

---

**2.** The court notes, as plaintiff argues, that Mr. Smilie opined plaintiff has an "obvious problem" learning new material if vision is required. (Pl.Br., 9)(citing (R. 108)). The ALJ, however, discussed the opinion as a very serious problem.

of the Commissioner and REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. *Hill v. Smith-Kline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir.2004).

Feb. 21, 2007.