KLEINFELD, J.,
concurring in part and dissenting in part:
I concur in the portions of the majority disposition affirming with regard to Na-dim’s appeal. I respectfully dissent with regard to Leegin’s appeal.
The district court denied Nadim’s motion in limine to exclude evidence of lost profits, sales, and reputation. By doing so, it caused the parties to spend a considerable amount of money, and jurors to spend a considerable amount of time and effort, on a jury trial. The jury returned a verdict in favor of Leegin. With no explanation at all, the district court then granted Nadim’s motion for a new trial.
When pressed for an explanation, the district court said that “there was no evidence to support the $245,275 award for the profits gained by defendants.” Na-dim’s own principal, however, authenticated a spreadsheet showing that its gross sales of the infringing belts totaled *577 $245,275. “If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant’s profits.”[1] A reasonable jury could conclude that Nadim, the infringing defendant, had not met its burden of proving costs, especially because the jury learned that Nadim had falsified other evidence. The spreadsheet authenticated by Nadim’s principal contradicts the district court’s claim that “no evidence” supports the $245,275 award. This admission by its principal was all the evidence needed. The grant of a new trial was an abuse of discretion because it was based on a clearly erroneous finding of fact.[2]
The district court granted a new trial because of an issue with the wrongful profits award. The majority affirms the grant of a new trial because of an issue with the actual damages award. Actual damages, however, are different from wrongful profits. “Congress explicitly provides for two distinct monetary remedies — actual damages and recovery of wrongful profits.”[3] Nadim moved for new trial based on both actual damages and wrongful profits. The district court did not grant a new trial because of actual damages, only wrongful profits. We know this because the district court approved a remittitur that included the jury’s award of actual damages. It denied Nadim’s motion to alter or amend the remittitur, in which Nadim argued that the actual damages verdict was not supported by the evidence.[4] We should not now affirm the district court on a ground that the district court had previously considered and rejected.[5]
On this record, what deserves deference is the jury verdict, not the decision of the district court.[6] There was sufficient evidence of actual damages, when reasonable inferences as well as direct evidence are considered. Direct evidence showed that some of Nadim’s infringing belts were placed immediately next to Leegin’s products on store shelves. It is a reasonable inference (supported in this case by opinion testimony), and not “mere speculation,”[7] to conclude that such placement had a substitution effect — that some customers who purchased an infringing (and less expensive) Nadim belt would have purchased Leegin belt had the Nadim belt not been available — as well as an adverse effect on the value of Leegin’s brand. Put a lower-priced item immediately next to a similar item made by a name brand and some consumers will choose the lower-priced one. That’s why retailers put the store brand next to the name brand. Na-dim offered no evidence to counter this reasonable inference.
Leegin also introduced evidence supporting the approximate amount of dam *578 ages. It lost $12.80 in direct and indirect profits for each infringing belt sold. 9,927 infringing belts were sold,[8] resulting in $127,065 lost profits. Doubled to account for the loss of consumer goodwill and other intangible damages, the result is less than $1000 different from the jury’s verdict.
This evidence also shows that the district court erred in granting summary judgment for Nadim, especially after a jury verdict went the other way. The grant of summary judgment, without explanation, came almost three years after the denial of judgment as a matter of law, also without explanation. Such unreasoned reversals of unreasoned decisions do not merit deferential review. I would reverse and remand with instructions to enter judgment in accord with the jury verdict.
I would also instruct the district court to grant attorneys’ fees in favor of Leegin, the prevailing party based upon the jury verdict. The majority reverses the denial of attorneys’ fees, holding that district court should exercise its discretion in a reasoned order. The contrast between how we treat the unreasoned decision denying attorneys’ fees and the unreasoned decision granting a new trial is telling. On attorneys’ fees we reverse and remand. On the grant of a new trial, however, the majority searches the record to find any reason to uphold the district court. Applying the same standard of review to the same lack of reasoning from the district court should not produce different results.

. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 514 (9th Cir. 1985).

. See Lockyer v. Mirant Corp., 398 F.3d 1098, 1105 (9th Cir.2005).

. Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 707-08 (9th Cir.2004) (emphasis added).

. Eight months later, without any explanation, the district court vacated the remittitur and reinstated the new trial order. When again pressed for explanation, the court reiterated the same reason as before — an issue with the wrongful profits award.

. See United States v. Alexander, 106 F.3d 874, 876-77 (9th Cir.1997) (district court’s refusal to apply law of the case doctrine to issues previously decided constitutes abuse of discretion).

. See Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir.2004) ("The relevant inquiry is whether the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury verdict.”).

. Id. at 710 (9th Cir.2004).

. Some infringing belts were returned. The jury could have determined, however, that they were returned precisely because they were not the Leegin products which they resembled.